## Case No. 18,016.

### WOODWORTH et al. v. HALL et al.

[1 Woodb. & M. 248;[1] 2 Robb. Pat. Cas. 495.]

Circuit Court, D. Massachusetts. May Term, 1846.

USE OF PATENTED MACHINE—INJUNCTION—EXTENSION AND RENEWAL OF PATENTS.

1. An injunction will not be issued against a respondent's using a machine, unless it is proved, that he has used it himself, or employed others to use it for him, or at least has profited by the use of it.

2. Where long possession of a patent has existed, and frequent recoveries under it, an injunction will be issued, the originality of the invention by the patentee not being denied, unless the letters appear for some cause illegal or void.

[Cited in Woodworth v. Edwards, Case No. 18,014; Woodworth v. Rogers, Id. 18,018.]

3. Where congress granted an extension of the term to an administrator, it was held to be legal, and that the letters of administration need not be produced after such a grant.

[Cited in Goodyear v. Hullihen, Case No. 5,573.]

4. A signature to the patent, and the certificate of copies, by a person calling himself "acting commissioner," is sufficient on its face in controversies between the patentee and third persons, as the law recognizes an acting commissioner to be lawful.

5. A patent surrendered and renewed operates as from the commencement of the original patent, except as to causes of action, arising before the renewal.

[Cited in Potter v. Holland, Case No. 11,329; Parham v. American B. O. & S. M. Co., Id. 10,713.]

6. If a mistake occurs in a copy of a patent, it can be corrected without causing any injury, but if it exists in the original patent, it cannot be corrected, so as to avail without the assent or re-signature of the secretary of state.

7. But the commissioner, if correcting it, need not re-sign or re-seal the letters, he being the same officer here who did it before.

8. If the mistake corrected be a material one, the letters cannot operate except on cases arising after it is made. But if a mere clerical one, quaere.

9. Where a renewal of patents surrendered is void, perhaps the surrender itself becomes also void, and the original patents remain in force.

[Cited in Woodworth v. Edwards, Case No. 18,014.]

10. Mere technical objections to letters patent are not to be encouraged or construed liberally, for him making them.

This was a bill in chancery, filed July 28, 1845, praying for an injunction against the defendants [Isaac Hall and another] not to use longer the planing machine invented and patented by William Woodworth; and for an account of profits from the use heretofore. The letters patent were alleged to have been issued to him as the inventor of that machine, December 27, 1828, for the term of fourteen years. It was further alleged, that he died on the 9th of February, 1839, and that on the 14th of the same month administration on his estate was granted to William W. Woodworth aforesaid. That the administrator applied to the commissioner of patents for an extension of the term of the original patent for the machine, and that it was duly granted to him, after proper proceedings, on the 16th of November, 1842, for seven years after the end of the first term of fourteen years. That about the 2d of January, 1843, he disclaimed the circular saws described in the schedule to said patent; and, on or about the 10th of the same month, he conveyed to Washburn and Brown, two of the complainants, the exclusive use of said machine in the county of Suffolk and some other enumerated places, with certain reservations to himself; and on the 11th of January, 1844, assigned to Wilson, the other plaintiff, all his remaining interest in the patent, except in the state of Vermont. It is then stated, that the respondents are now using a machine like his substantially; and are thus infringing on the patent owned by the complainants, and the bill prayed a discovery how long it had been done, and an answer to several interrogatories. In aid of the prayer for an injunction, and for the account before named, the bill further averred, that said Washburn and Brown prosecuted, and in May, 1844, recovered judgment in the county of Suffolk for a violation of this patent, and soon after they instituted a similar suit against the respondent Isaac Hall, who settled the same without trial, and paid damages, and received from them a license to use one of their machines for a specified term and for a certain rent, which he had neglected to pay. It was further averred in a subsequent amendment to the bill, that William W. Woodworth, as administrator, finding the specification in the patent open to certain objections and doubts as to its sufficiency, did, on the 8th of July, 1845, surrender the patent, and procure new letters with an amended specification; and that the said Washburn and Brown approved the surrender, and agreed to accept the same rights under the

---

[1] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

new patent as had been conveyed to them under the extension of the original one.

An answer was filed by Clement Hall on the 18th of September, 1845, which disclaimed any knowledge of most of the averments in the bill, and of the matters about which he was interrogated specifically; though a belief in the truth of most of them is expressed, except that he denied Woodworth to have been the original inventor of this planing machine, or that it is in other respects valid: and the answer further asserted that the new patent was for a different machine from the old one; and that the old one was not surrendered within the fourteen years of its term; and that Woodworth, before he died, had assigned to others all his interest in it; and that Washburn and Brown possessed no interest in the new patent, and wished an issue framed by the court to try these matters before a jury. In the course of the answer he admitted the use by himself alone, and not jointly with others, of a machine for planing, similar in some.respects to Woodworth's, but unlike in others. The answer of Isaac Hall was in most respects similar, except that he denied any violation of his former agreement with Washburn and Brown, or any use of the planing machine, either severally or jointly with others, since the expiration of a certain license to him to use it.

Some papers and affidavits were then submitted to the court by the counsel, and an agreement made to have a hearing on the prayer for an injunction before an issue was completed and tried on the originality of the patent, and in this hearing to waive any objections to the originality of the patent in Woodworth.

B. R. Curtis, for complainants.
Giles & Dehon, for respondents.

WOODBURY, Circuit Justice. There has been no evidence whatever offered in this case of any use of the planing machine by Isaac Hall since his license expired, except what is contained in the affidavit of Aaron Pratt. This witness did not see him use it; but made a bargain with him about the 15th of July, 1845, to plane for the witness certain boards at the ordinary price, intending to set off the amount against rent due from said Isaac. Clement Hall, however, was present, and said, "We can plane them for you," and the work was done, but the witness does not say by whom, nor whether in fact the compensation for it was made to Isaac. Against this is the answer of Isaac, responsive to the bill, and sworn to, denying that he had ever used the machine since his license expired; and this agrees with Clement's assertion in his answer, that the machine was used by him alone. The facts testified to by Pratt might, standing alone, be sufficient to justify an inference that Isaac had planed the boards and used the machine.

In such cases, it may be, that any workman on the machine, though not interested in it, is liable to be restrained in order to prevent evasions, by treating all as principals who are aiding. It is a common case, also, that if one does not in person perform the work, but procures another to do it for his advantage on a machine owned by himself, he can still be restrained, and is estopped from denying, qui facit per alium, facit per se. Possibly, too, if one hires another to do work on such a machine, he may be restrained. 4 Man. & G. 179. But it is not necessary to give a decisive opinion on this, after comparing the evidence with the denial in Isaac's sworn answer.

After that answer thus testified to as true, the probability is, and it is a construction not inconsistent with the veracity of both Pratt and Isaac, that the boards were planed by Clement alone, and on his own contract, or his own assent to the arrangement, and for his own profit. It would seem, also, very easy to produce further evidence of the fact of Isaac's using the machine, or receiving the profits from it, if such was the truth. Until it is produced, the fairest construction of the affidavits and answer are, that Isaac did not work the machine or profit by it. If this construction were not the most reasonable, and did not reconcile what is sworn to in the affidavit and answers, the court would still be compelled to refuse to issue an injunction against Isaac, on the affidavit of Pratt alone, for the want of evidence in it to overcome Isaac's answer. Because something more must be produced than the evidence of a single witness to overcome an answer under oath, and responsive to the bill. Carpenter v. Providence Washington Ins. Co., 4 How. [45 U. S.] 185. Certainly something more than the evidence of one witness, and he not testifying explicitly that Isaac either owned or worked the machine, or received any of its profits.

But in respect to the liability of Clement to an injunction, the testimony is very different; and, notwithstanding the several ingenious objections that have been urged, I have come to the conclusion that one ought to be issued against him. He admits that he uses a machine for planing, which is, in some important respects, similar to that described in Woodworth's patent. He waives, also, any opposition in this hearing to its having been originally invented by Woodworth. It is shown, moreover, that this patent has been possessed by Woodworth and others under him for something like eighteen years. It is well known, too, that, during this period, numerous recoveries have been had against persons for infringements upon it in several states in the Union; and that the sales of it by Woodworth and his assignees have been very extensive. Furthermore, two of the plaintiffs, Washburn and Brown, are admitted to have obtained verdicts in its favor against persons in this city; and a settlement

and recognition of their title by the other defendant, Isaac Hall, brother of Clement, is a conceded fact in this case.

The various questions of law which have been started in this litigation, whether technical or on the merits, have mostly been carried up to the supreme court of the United States; and after full argument and patient scrutiny have, in almost every instance, been decided in favor of the patentee and those claiming under him. But still, if objections are now taken in favor of Clement Hall, new or otherwise, which ought on sound principles to prevail, the injunction should not issue against him. Hence it becomes necessary to examine all the objections which have been urged on the present occasion; but I shall not decide on any occurring to me but not urged, presuming that they are waived till the future trial on the merits.

The first objection taken is to the new letters patent, because they are issued to the administrator of the original patentee, But that objection was overruled in the case on this patent from New York, in Wilson v. Rosseau, 4 How. [45 U. S.] 646. The renewal in the name of the administrator by the board of commissioners, for seven years, was considered good, on the ground that an invention was personal property. An invention possesses value beyond the first patent on it; being valuable for purposes abroad as the ground for a patent there, and also for a renewal at home, independent of any unexpired period of the original term, which might go as assets to an administrator. And congress has confirmed this view of the right, by extending the patent, through a special law, to the administrator even seven years longer, after the time given by the board expires.

The next objection is, that no letters of administration are now produced. But in the Kentucky case (Woodworth v. Wilson, 4 How. [45 U. S.] 712), this objection, among others, was urged, and the court did not sustain it, because the patent, being renewed to the plaintiff as administrator, was proof that he had satisfied the board at the patent office of the fact of his being administrator, and it was not now competent to go behind their decision in respect to it.

The third objection taken here is, that the patent is not certified by Mr. Burke, who was the commissioner at that time, but by H. H. Sylvester, as acting commissioner. This point was also made in the New York case. Wilson v. Rosseau. 4 How. [45 U. S.] 646. But on my suggestion to the counsel that there were two early acts of congress, which authorized the president to appoint acting heads to the different departments and bureaus, though the offices were not vacant de jure, but the incumbents were absent from the seat of government or indisposed; and that the law conferred on those so acting all the powers which belonged to the officers they represented; and that this might, on the

face of it, be legal, on the presumption it was such an appointment, unless the contrary was shown, the point was no further argued; and the court, in their opinion, held the patent to be good, which could not have been if this objection was deemed valid, under such a state of the facts. The laws mentioned may be seen in the eighth section of the act of congress of May 8, 1792, c. 37 (1 Stat. 281), and the act of February 13, 1795, c. 21 (Id. 415). If the provision in the patent act of 1836, that the chief clerk may perform certain duties when the office of commissioner is vacant, alone governed the present question, as was formerly supposed, then the ingenious argument of the respondents' counsel might apply. But it is an appointment of acting commissioner which may have been under the other general laws in the absence or illness, and not a technical vacancy of the head of the bureau, and whose powers, when so acting, are as full as those of the commissioner himself, and his appointment under that law by the president alone being authorized expressly by congress, it must be presumed to have been made here, in the absence of any evidence to the contrary, and to have been duly made where drawn in question incidentally or collaterally, if it be shown that the person certifying is in the public discharge of those duties. In such cases, as acting appointments may be legal, he will be presumed to be acting legally till the contrary is shown. Potter v. Luther, 3 Johns. 431; Berryman v. Wise, 4 Durn. & E. [4 Term R.] 366; 3 Durn. & E. [4 Term R.] 635. Even in cases of murder. Dalmer v. Barnard, 7 Durn. & E. [4 Term R.] 248, 251; McNal. Ev. 487, 488. In such case, too, as the laws recognize acting officers at the heads of bureaus, whose appointment is not in the hands of the secretaries alone, like the patent office since 1836, the signatures of persons as acting commissioners carry as much verity and legality on the face of the certificates themselves, as those by the commissioner himself. They meet, then, the requisitions of the past as well as the following cases (Bleecker v. Bond [Case No. 1,534]; U. S. v. Burr [Id. 14,693]), until it be shown, if it can be properly shown, in contests between third persons, that the acting appointment was not in truth made in the manner authorized by law.

There are some other objections, however, taken here, which were not decided in [Wilson v. Rosseau] 4 How. [45 U. S.] 647, and [Woodworth v. Wilson] Id. 716, and which it is proper to examine. One of them is this. The original patent for fourteen years, given in December, 1828, expired in 1842, and though it was extended by the board for seven years more, which would last till 1849, and by congress for seven more, which would not expire till 1856, yet all of these patents were surrendered July 8, 1845, and a new one taken out for the whole twenty-eight years from December, 1828. This was done, also,

with some small amendments or corrections, in the old specification of 1828. After these new letters patent for the whole term, no assignment having been made to Washburn and Brown, but only one previously on the 2d of January, 1843, the plaintiffs contend that all the previous letters being surrendered, and a new specification filed, and new letters issued, any conveyance of any interest under the old letters is inoperative and void under the new ones; and hence that Washburn and Brown possess no interest in these last, and are improperly joined in the bill. But my impression, as at present advised, is, that when a patent has been surrendered, and new letters are taken out with an amended specification, the patent has been always considered to operate, except as to suits for violations committed before the amendment, from the commencement of the original term. The amendment is not because the former patent or specification was utterly void, as seems to be the argument, but was defective or doubtful in some particular, which it was expedient to make more clear. But it is still a patent for the same invention. It can by law include no new one, and it covers only the same term of time which the former patent and its extensions did.

In the present case, these are conceded to have been the facts; and it is an error to suppose that on such facts the new letters ought to operate only from their date. By the very words of those letters, no less than by the reasons of the case, as just explained, they relate back to the commencement of the original term, and for many purposes should operate from that time. I do not say for all, as an exception will hereafter be noticed. This is in strict analogy to amended writs and amended judgments, which, for most purposes, have the same effect as if the amended matter was in them originally.

Again, if such were not the result, generally, the new letters would be treated as taking out a new patent, or an old one in a form then first valid; and, in such a view, would, of course, run fourteen years from the date of the new letters, instead of only fourteen from the issue of the original letters; or if they have been extended as here, fourteen longer, they would not run only twenty-eight years from the beginning of the original term, i. e. December, 1828, as here, but twenty-eight years from July, 1845, the date of the new letters. Besides these considerations, it has been held, that recoveries under the original patent are evidence after the new letters and new specification, to strengthen the title of the plaintiff so as to obtain an injunction; thus treating the patent as one and the same, and a conveyance of it once therefore for a specified term, as good for the term, whether an amended specification be filed or not before the term closes. See Orr v. Littlefield [Case No. 10,590]. Also Orr v. Badger [Id. 10,587], before Justice Sprague, February, 1845. It would be a little strange, that a recovery under the new and amended and corrected specification should be, as is another argument for the defendant, any stronger evidence of right than a recovery, even when the specification was more objectionable.

Independent of these circumstances, it is averred in the bill as amended, that Washburn and Brown have adopted and approved of the new specification; and that they claim under their contract, and to the extent of it, all the rights conferred by it on the patentee. There is, moreover, a clause in the act of July 4, 1836, c. 357, § 13, which seems to have been designed to dispose of such objections; and though it does not mention contracts or assignments, it is quite broad and comprehensive enough to cover them. It is: "The patent, so re-issued together with the corrected descriptions and specifications, shall have the same effect and operation in law on the trial of all actions hereafter commenced for causes subsequently occurring, as though the same had been originally filed in such corrected form before the issuing of the original patent." It would be very doubtful, also, whether a misjoinder of parties as plaintiffs in an application of this kind, could defeat a prayer for an injunction not to use a machine in which any of them were interested. At law, such a misjoinder could be objected to only in abatement, as the act sounds ex delicto (1 Chit. Pl. 75); and probably it could not be objected to at all in equity, though in the final judgment, of course it would be entered up in favor of those alone who appeared to have some right and interest to be protected. As the claims of two of the plaintiffs, however, have been already proved and established in several recoveries before the new letters; and the contract now offered, under which they claim, confers on them a right to use fifty planing machines within certain territory, including this city; and there is a covenant by the grantees of that right not to sell to different persons liberty to use others within those limits, during the time of Washburn and Brown's contract, their interest within them would seem to be sufficiently exclusive to make them properly plaintiffs, and entitled to judgment. The strongest doubt with me is in relation to the interests of the others in this city, so as to justify joining them; but as that objection has not been taken, and all the facts are not known to me concerning them, I pass it by for the present.

But there is one more exception in this case; and it is of a character causing some difficulty, if the evidence in respect to it was more clear, and accorded with what is supposed by the counsel for the respondent to have been the truth of the transaction. The original patent is not put in evidence here, but a certified copy from the patent office. That copy now reads, that the term

is one of twenty-eight years from December, 1828, but when produced at a former opening of the cause it is admitted that it read fourteen years from December, 1828. A letter from the commissioner is offered by the respondents, stating, as I understand it, that the change has since been made in order to correspond with the truth, the new letters patent being for twenty-eight years from 1828, and the record being so, but the forms for copies having been printed fourteen, some were filled up without altering the printed term from fourteen to twenty-eight. The respondents infer from this explanation, that the letters patent themselves, as issued in July, 1845, and not merely the copy of them, contained the same mistake, and that the record of them did also; and supposing that both have been altered since, as well as the copy, the respondents object to the legality of such amendments, and likewise contend, that if legal at all, it is so only in respect to suits and other matters arising subsequently to the alteration. But I do not understand the letter of the commissioner to go beyond the copies; and if only the copies were erroneous, and they have been corrected, he undoubtedly had the power, and ought to make them conform to the patent itself and the record.

On the contrary, if the new letters patent themselves were by mistake for only fourteen years from December, 1828, when they were intended to be twenty-eight, and thus to cover not only the original term, but both the renewed terms; and the commissioner has amended them since this bill was filed, I doubt whether, on the testimony now before us, they could be received in evidence to sustain this bill, considering its allegations to go on a patent for twenty-eight years, and one so issued on the 8th of July, 1845. It would probably be his duty to correct the letters patent in such a case, when applied to, and to minute the correction on or in them; as these matters are between him representing the government and the patentee. Nor would it be necessary for him in such case to re-sign or re-seal the letters, as is urged on English precedents. See Sharp's Case and Nickels' Case, in Webst. Pat. Cas. 645 and 658. For those do not apply here when the signing and sealing are by the same officer, and by the same also as he that makes the correction. For he adopts them as his own acts by re-delivering the patent after it is amended, as much as he adopts the writing of it on the paper or parchment. But it would seem to be necessary to have the secretary of state sign anew, or assent to the amendment, as he is a distinct officer, and without signing anew, or assenting, has never examined and authenticated the letters as amended.

The record or enrollment must also be made to correspond with the letters as amended, if it does not already. As to the effect of such alteration, I entertain an impression, resting on general principles and the grounds of some of the precedents abroad, and in the absence of any statute here, to allow amendments of this kind, or to prescribe their effect in such cases, that a patent after thus amended in a material mistake, could not operate as to third persons against whom prosecutions were pending, but only for causes accruing after the correction. See Webst. Pat. Cas. 664. It may be different if the mistake was entirely clerical. If the mistake was not clerical, or one made by the patentee himself, it is quite clear that the law abroad makes it operate only from that correction, and it is so here in respect to defective specifications, when they are allowed by statute to be amended in certain cases. See Act July 4, 1836, c. 357, § 13. They are not good as to suits pending, but only as to actions for causes subsequently accruing.

But in cases like this, if it should turn out, on clear evidence, that the new letters themselves had been altered so as to be wholly void, a different and equally difficult question may arise: It is this, it might be that the surrender of the original letters, and of the extensions of them, so that all might be renewed in one, would become also void; and the party might then, perhaps, be allowed to amend his bill, and enjoin and recover on the former letters patent, if the old specification was not too defective for that purpose. On this I give no opinion at this time; but if evidence be obtained, that the new letters patent themselves have been altered as to the term in them since this action was commenced, as the respondents' counsel apprehend, it may then become necessary to decide it. The mode adopted in this case, of issuing one set of new letters patent for the three different terms before existing, when the old specification was sought to be corrected, is likewise open to some question concerning its legality. The most obvious mode would be to renew each separately, or renew only the old letters and their specification; and let the others be cured or aided by relation back to the original one. But as no such objection is pressed now, I forbear comment upon that also.

It may not be improper to add before closing, in relation to technical objections, as most of them are when urged against injunctions generally, that though they are to be weighed and examined, and allowed to prevail, as they must in other cases in equity, if legal, yet they ought to be treated with no particular indulgence. In all inquiries in equity, the leaning in doubtful points must certainly be rather against than in favor of them; and more especially must it be so in preliminary injunctions, where the decision is only temporary, and may be dissolved on motion at any time, on showing fuller proof as to any thing affecting the merits of the controversy. The injunction

as to Clement Hall is allowed till the further order of the court, but not against Isaac Hall.

[For further proceedings in this case, see Case No. 18,017. For other cases involving this patent, see note to Bicknell v. Todd, Case No. 1,-389.]